IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRACY DEAN DANIEL, ID # 61480-080,<br>    Petitioner,<br><br>vs.<br><br>DAVID BERKEBILE, Warden,<br>    Respondent. | No. 3:04-CV-2047-P (BH)<br>ECF<br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A. Nature of the Case**

Petitioner, a prisoner incarcerated in a federal prison in Seagoville, Texas, (FCI Seagoville), filed the instant action pursuant to 28 U.S.C. § 2241 to challenge the manner in which he is serving his federal sentence and the calculation of credit to his federal sentence by the Bureau of Prisons (BOP). Petitioner named the Warden of FCI Seagoville, Dan Joslin, as respondent. Because David Berkebile has replaced Dan Joslin as Warden at that facility, the Court substitutes him as respondent. *See* Fed. R. Civ. P. 25(d)(1).

**B. Factual and Procedural History**[1]

While on state parole for two previous offenses, Petitioner was arrested on July 5, 1995 for

---

[1] The filings in this case and petitioner's federal criminal case, *United States v. Daniel*, No. W-95-CR-076 (W.D. Tex. 1995), provide the factual and procedural history for this case. Courts may take judicial notice of their "own files and records, as well as facts which are a matter of public record." *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006).

new offenses by state authorities in Freestone County, Texas. The state proceedings were pending when he was transferred from state custody to the United States Marshal's Service via *writ of habeas corpus ad prosequendum* on August 28, 1995, to answer federal charges in Cause No. W-95-CR-076 in the Western District of Texas. The federal court sentenced him to 180 months imprisonment on December 13, 1995, and on January 26, 1996, he was erroneously delivered to a federal correctional institution for confinement. He remained confined in federal custody until he was returned to the custody of the State of Texas on February 29, 1996. After completion of his state sentence, he was returned to federal custody on May 18, 2000.

By correspondence dated December 18, 2000, the federal sentencing judge advised the BOP that he intended petitioner's federal sentence to run consecutive to his state sentence. On August 24, 2001, the federal sentencing court issued an order denying petitioner's specific request that the federal and state sentences run concurrently.

While at FCI Seagoville in September 2004,[2] Petitioner filed the instant action. He claims that according to the unambiguous language of 18 U.S.C. § 3585(a), his federal sentence commenced on January 26, 1996, but respondent has calculated his federal sentence as commencing on May 18, 2000. Petitioner seeks credit for the period of time between January 26, 1996, and May 18, 2000, based in part on *Hanks v. Wideman*, 434 F.2d 256 (5th Cir. 1970).

On November 29, 2004, the government filed an answer to the instant petition wherein it concedes that federal authorities mistakenly designated Petitioner to a federal correctional facility on January 26, 1996, that Petitioner should have been returned to state custody, and that he was

---

[2] Although Petitioner was subsequently transferred to another federal facility, such transfer does not affect the jurisdiction of this Court to entertain the instant petition because jurisdiction is determined at the time of filing. *See Lee v. Wetzel*, 244 F.3d 370, 375 n.5 (5th Cir. 2001).

returned to the state on February 29, 1996. It further submits that Petitioner received credit against his state sentence for all time spent in custody following his arrest on July 5, 1995, and that his claims are foreclosed by *Free v. Miles*, 333 F.3d 550 (5th Cir. 2003) (per curium).

## II. ANALYSIS

**A.     Commencement of Federal Sentence**

Petitioner alleges that based on the unambiguous language of 18 U.S.C. § 3585(a), his federal sentence commenced on January 26, 1996, but respondent has calculated his federal sentence as commencing on May 18, 2000. (Pet. Br. at 2.)

### 1.     *18 U.S.C. § 3585(a)*

"Title 18 U.S.C. § 3585 determines when a federal sentence of imprisonment commences and whether credit against that sentence must be granted for time spent in 'official detention' before the sentence began." *Reno v. Koray*, 515 U.S. 50, 55 (1995). With respect to commencement of a federal sentence § 3585(a) provides: "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily at, the official detention facility at which the sentence is to be served."

Here, Petitioner was sentenced to 180 months imprisonment on December 13, 1995, and was delivered to a federal correctional institution to begin serving his federal sentence on January 26, 1996. According to the plain language of § 3585(a), petitioner's federal sentence commenced at the latest on January 26, 1996, when he was delivered to a federal correctional institution to begin serving his federal sentence.

### 2.     *Free v. Miles*

Respondent does not specifically address the plain language of § 3585(a), arguing generally

3

that Petitioner's position is foreclosed by the Fifth Circuit's opinion in *Free v. Miles*, "a case bearing remarkable factual similarity to the instant case." (Resp. Ans. at 7-8.) In *Free*, a state prisoner on "loan" to federal authorities was convicted and sentenced for a federal crime; (2) he began to serve his federal sentence through a mistake of the federal authorities and no fault of his own; (3) after serving less than his full federal sentence in federal custody, he was returned to state custody to complete his state sentence; and (4) after completion of his state sentence, the prisoner was returned to federal custody to complete his federal sentence. *See* 333 F.3d at 553. As in this case, Free filed a petition for writ of habeas corpus pursuant to § 2241 alleging that the BOP "(1) erroneously calculated the starting date for his federal sentence, and (2) failed to give him credit for the time he served while in state custody." *Id.* at 551. The district court in *Free* concluded that the BOP had erroneously calculated the starting date of Free's federal sentence, which commenced on the date he was mistakenly transferred to a federal penitentiary following imposition of his federal sentence, but that Free was not entitled to federal credit for the time served in state prison after he was returned to state custody. *Id.*

Ultimately, Free appealed the district court's denial of credit for the time he spent in state custody after the commencement of his sentence. *Id.* at 552. The Fifth Circuit began its review of this issue by stating, "[i]nterestingly, Free's claim for time-served credit only makes sense in light of his successful petition on the issue of the proper starting date of his federal sentence." *Id.* The appellate court also expressly noted that the district court had relied on the plain language of § 3585(a) in reaching its conclusion regarding the commencement date. *Id.* In concluding that Free was not entitled to federal credit for his state time, the Fifth Circuit noted that Free had "rightly and successfully challenged" the denial of credit for his federal time, thus implicitly approving the district

4

court's determination of the federal sentence commencement date. *Id.* at 555. *Free* therefore supports Petitioner's claim that his federal sentence commenced when he was transferred to the federal prison on January 26, 1996.

### 3. *Patterson v. Cockrell*

Respondent further contends that "[t]his Court recently applied the rule in *Free*, denying relief to an inmate in state custody whose federal term will not be calculated as beginning until after he is released from state authorities" despite his mistaken detention in federal custody for four years in *Patterson v. Cockrell*, No. 2:01-CV-0135, 2003 WL 22016943 (N.D. Tex. Aug. 26, 2003), *appeal dismissed as frivolous sub nom Patterson v. Dretke*, No. 03-10996, 2004 WL 870895 (5th Cir. Apr. 23, 2004). (Resp. Ans. at 11 n. 7.) The facts in *Patterson* are materially similar to those in the instant case, except that petitioner's transfer to the BOP to begin serving his federal sentence resulted from state error rather from the failure of federal officials to return him to state custody. *Id.* at 1-3.

Patterson filed a § 2241 petition alleging violations of due process, the *Ex Post Facto* Clause, the Eighth Amendment, and the Interstate Agreement on Detainers; deprivation of his federal discharge date and good time credits; and service of his federal sentence in installments. *Id.* at 3-4. He sought, in relevant part, to have his federal sentence run concurrently with the service on his state sentence. *Id.* at 4. The district court found that all of the petitioner's arguments were foreclosed by the Fifth Circuit's decision in *Free*. *Id.* In particular, it found that jurisdiction over the petitioner was controlling, and that jurisdiction over petitioner remained with the state even though the state had "loaned" him to federal authorities for prosecution. *Id.* The district court further relied on the fact that petitioner had been awarded correct time credits toward his state sentence, finding that he was in the same position as if he had not been mistakenly transferred to the BOP and

5

had suffered no actual harm from the transfer. *Id.*

Because the petitioner did not specifically challenge the calculation of the commencement of his federal sentence, the *Patterson* court had no occasion to consider § 3585(a) in its analysis. However, other courts which have considered the application of § 3585(a) under similar circumstances have also found that a state prisoner produced in federal court pursuant to a writ of habeas corpus *ad prosequendum* is only "on loan", and a federal sentence therefore does not commence even though the prisoner was mistakenly transferred to a federal facility to begin service of a federal sentence. *See Henderson v. Joslin*, 2007 WL 148733, *3-4 (N.D. Tex. Jan. 22, 2007); *see also Binford v. United States*, 436 F.3d 1252, 1253 (10th Cir. 2006) (holding that a federal sentence does not commence when a prisoner who is on loan to federal authorities pursuant to a writ of habeas *corpus ad prosequendum* is mistakenly transferred to a federal facility instead of a state facility) (citing *Free*).³ This Court respectfully disagrees.

The concept of a prisoner "on loan" via a writ of habeas *corpus ad prosequendum* was recognized by the Fifth Circuit in *Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980). In that case, the petitioner challenged the order in which he was serving consecutive state and federal sentences, contending that he should first serve his earlier-imposed federal sentence. *Id.* The Fifth Circuit stated:

> The law is clear in this Circuit that, if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings *or the federal sentence if the federal government wishes to execute it immediately*. . .A

---

³ The Tenth Circuit later declined to find the fact of a writ of habeas corpus *ad prosequendum* determinative and instead found "from both the manner in which [the inmate] was turned over to the federal authorities and from the subsequent conduct of both sovereigns, whether the parties intended that primary custody would be transferred to the United States." *See Stroble v. Terrell*, 200 Fed. App'x 811, 816 (10th Cir. 2006).

6

writ of habeas corpus ad prosequendum is only a "loan" of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction.

*Id.* (citations omitted) (emphasis added).

*Causey* expressly stated that a federal sentence could be served during the time that a prisoner was "on loan" from the state. If, as Respondent contends, a state prisoner's federal sentence does not commence while the prisoner is "on loan," a state prisoner intentionally transferred to a federal facility to serve his federal sentence as contemplated in *Causey* could theoretically complete his term of imprisonment in federal custody, yet receive no federal credit. On the other hand, *Causey* can readily be reconciled with application of § 3585. Ordinarily, a state prisoner "on loan" pursuant to a writ of habeas corpus *ad prosequendum* is promptly returned to state custody after the conclusion of the federal proceedings and is not entitled to federal credit for the time in federal custody except as provided by § 3585(b).[4] However, if the prisoner is transferred to the custody of the BOP for service of his/her sentence after the federal proceedings, even if by mistake, the plain language of § 3585(a) mandates that the federal sentence commence.

Accordingly, the Court finds that petitioner's federal sentence commenced at the latest on January 26, 1996, when he was delivered to a federal correctional institution to begin serving his federal sentence.

---

[4] Section 3585(b) provides:

> **(b) Credit for prior custody.**–A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> > **(1)** as a result of the offense for which the sentence was imposed; or
> > **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

7

**B.     Credit for Time in Federal Custody from January 26, 1996 through February 29, 1996**

Petitioner also seeks credit against his federal sentence for the period of time he spent in federal custody between January 26, 1996, and February 29, 1996, when he was returned to state custody.

*1.     Free v. Miles*

*Free* likewise supports Petitioner's position on this issue. As noted above, the district court in that case found that Free's "period of approximately six months' incarceration at the [federal prison] must be counted by the BOP as time served on his federal sentence." 333 F.3d at 552. On appeal of the district court's denial of credit for Free's subsequent time in state custody, the Fifth Circuit explicitly approved the district court's finding by stating that Free had "rightly and successfully challenged" the denial of credit for the six months that he spent in federal custody, "a result that the government has not appealed." *Id.* at 555. Under *Free*, Petitioner is entitled to credit against his federal sentence for time he served in federal custody between January 26 and February 29, 1996.

*2.     No Actual Harm*

Respondent points out that Petitioner has suffered no actual harm from his mistaken transfer to federal custody because he received credit for his federal time against his state sentence; thus, he should not get credit for his federal time. (Resp. Ans. at 11.) The Court notes that *Patterson*, upon which Respondent relies, based its holding in part on its finding of no actual harm to the petitioner. 2003 WL 22016943 at *4 ("Moreover, it appears petitioner has been awarded correct time credits toward his state sentence, is in the same position he would have been had he began serving his state sentence in state custody from the beginning, and has sustained no actual harm from the complained

of events.").

In *Boston v. Attorney General*, 210 Fed. App'x 190, 194 (3d Cir. 2006) (per curium), the Third Circuit held that a petitioner was entitled to credit for time served in federal custody regardless of his receipt of credit to his state sentence for that time. To find otherwise would mean that the petitioner's "federal sentence began, but never ran" despite his incarceration in a federal facility. *Id.* The Third Circuit stated:

> This awkward result is not dictated by a decision not to apply the common law [continuous service] rule. Nor are we aware of any authority indicating that the sentencing judge's intention that Boston's federal sentence be served consecutively to his state sentence dictates that the federal sentence time that Boston served at a federal facility should be erased when state authorities later award state credit for that time. We conclude, then, that Boston should receive credit against his federal sentence for the time he served in federal custody until the time of his transfer back into state custody.

*Id.* (citing *Free*, 333 F.3d at 555).

Policy considerations support this approach. It is incumbent upon the BOP to calculate credit to be given to federal sentences in accordance with statutory mandates. Congress has established a statutory scheme in which it defines the commencement date of a federal sentence followed by a statutory provision to address sentence credit for pre-sentence detention; it follows that the federal prisoner will receive credit for time spent in federal custody after the commencement of his federal sentence. To disallow such credit merely because the State has chosen to grant the inmate credit for such time on his state sentence makes the federal sentence unnecessarily dependent on a decision by the State that lies outside the control of the federal government. Furthermore, as discussed in the previous section, the Fifth Circuit in *Causey* expressly contemplated service of a federal sentence while a state prisoner was "on loan." Once a prisoner's federal sentence

9

commences upon his arrival at the designated federal facility, even though the result of a mistake, time served at that facility upon that sentence should be credited to the federal sentence.[5]

For all of these reasons, the Court finds that Petitioner should receive credit against his federal sentence for time served in federal custody between January 26 and February 29, 1996.

## C. Credit for Time in State Custody from February 29, 1996 through May 18, 2000

Petitioner further contends that he is entitled to credit for the time he spent in state custody from February 29, 1996 through May 18, 2000.

### 1. *Interruption of Sentence*

Petitioner contends that because his federal sentence was interrupted due to no fault of his own, he was entitled to credit to that sentence for the time he spent in state custody following commencement of his federal sentence based on federal common law.[6]

This claim is squarely foreclosed by *Free*. There, the Fifth Circuit recognized the "common law rule that a prisoner is entitled to credit for time served when he is incarcerated discontinuously through no fault of his own." *See* 333 F.3d at 553-54. However, the Circuit also recognized that "[t]he limited function of this rule is clear: [i]ts sole purpose is to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." *Id.* at 554. Noting that "Free [was] serving the correct total time of his *consecutive* state and federal sentences," the court found the fact "[t]hat he will have done

---

[5] Nor does such a result, as Respondent argues, subvert the plain meaning of § 3584(a) and the clearly-expressed intent of the sentencing court that Petitioner's sentences run consecutively. (Resp. Ans. at 11.) Allowing Petitioner federal credit for his approximately thirty-five days in federal custody after commencement of his sentence does not change his sentences from consecutive to concurrent.

[6] As the Fifth Circuit noted in *Free*, this claim "only makes sense in light of his successful petition on the issue of the proper starting date of his federal sentence." 333 F.3d at 552. If the federal sentence has not commenced, then it logically cannot be interrupted.

10

so in two shifts between sovereigns rather than one is of no moment." *Id.* at 555 (emphasis in original). It concluded that "[t]he rule against piecemeal incarceration precludes the government from artificially extending the expiration date of a prison sentence; the rule does not, however, justify or mandate that a prisoner receive a 'get out of jail early' card any time that such a minuet occurs, even when the prisoner is not at fault." *Id.* The Fifth Circuit thus affirmed the denial of credit to Free for the time spent in state custody following the erroneous commencement of his federal sentence. *Id.*

In this case, petitioner's federal sentence was interrupted on February 29, 1996, when he was returned to state custody. Although the interruption was due to no fault of his own, the holding of *Free* unquestionably precludes his claim for sentence credit for all the time he spent in state custody between February 29, 1996, and May 18, 2000.

### 2. *Hanks v. Wideman*

Petitioner further argues that he should be afforded the same consideration as the petitioner in *Hanks v. Wideman*, 434 F.2d 256 (5th Cir. 1970).

In *Hanks*, the petitioner was serving a state sentence when he as released to federal authorities on a writ of habeas corpus *ad prosequendum*. 434 F.2d at 256. He pled guilty to federal charges and was sentenced to a term of imprisonment, after which he was returned to state authorities. *Id.* at 256-57. While in state custody, the petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254 attacking his state sentence, and he was brought to federal court to attend a hearing on that writ. *Id.* at 247. Subsequently, he was mistakenly transferred to a federal penitentiary to begin service of his federal sentence instead of being returned to state authorities. *Id.* After twenty-three days in federal custody, the mistake was discovered, and the petitioner was returned to state custody.

11

*Id.* Petitioner then filed a federal petition for habeas corpus contending that federal authorities had waived jurisdiction over him by releasing him to the state after service of only twenty-three days. *Id.*

The Fifth Circuit found no waiver of jurisdiction by the federal authorities resulting from petitioner's return to the state, noting first that federal authorities had placed a detainer for petitioner at the state prison in order to reacquire jurisdiction over petitioner after completion of his state sentence, and secondly, that there was no evidence of any "loss of interest" in the petitioner by the federal authorities. *Id.* The Fifth Circuit further noted:

> Finally, it appears that Hanks has suffered no hardship from the erroneous transfer to the Federal penitentiary. Indeed, it appears that he has received a windfall, for subsequent to his return to Federal prison on August 27, 1968, the Bureau of Prisons of the Department of Justice determined that Hanks' Federal sentence should commence on July 23, 1968 and run concurrently with his State sentence from that date. Thus, Hanks has received credit on his Federal sentence for the mistaken time served in the Federal prison from August 4 to August 27, plus additional credit for time from the date of his return to the State penitentiary to February 27, 1970, the date of his release to Federal authorities.

*Id.*

Just as the petitioner in *Hanks* received credit to his federal sentence for the time he served in state custody, Petitioner contends that he should likewise receive credit for his time in state custody. In *Hanks*, however, the BOP determined that the petitioner's federal sentence should run *concurrently* with the state sentence. In contrast, the BOP has determined in this case, based on direction from the federal sentencing court, that Petitioner's federal sentence should run *consecutively* to his state sentence. *Hanks* is therefore distinguishable.

For these reasons, Petitioner is not entitled to federal sentence credit for the time he spent in state custody between February 29, 1996, and May 18, 2000.

## III. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **GRANT** the instant petition filed pursuant to 28 U.S.C. § 2241 to the extent Petitioner seeks federal sentence credit for the time he spent in federal custody between January 26 and February 29, 1996. It is further **RECOMMENDED** that the Court otherwise **DENY** the instant petition.

**SIGNED this 10th day of September, 2007.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE